## John Flickinger *vs.* Peter Hull.—*June*, 1847.

In 1821 *S*. was appointed guardian, and gave bond with *F*. and *H*. as his sureties. In 1825 *S*. died insolvent, and in debt as guardian. *H*. was appointed his successor, and *F*. became his surety. The *second* guardian before he had received any part of his ward's funds, charged himself with the balance due from his predecessor. In 1845, the infant sued the second guardian's bond, and recovered judgment against *H*. and *F*. when the second guardian paid the ward a greater sum than he had received in fact from the first. The ward then assigned the judgment to *F*. who was about to sue out execution against *H*. for the whole judgment, though he had in fact, but paid a part of it. Held,

1. Whether one surety can sue another security to the same instrument, for contribution in a case where the plaintiff by a change of his relation, had only made himself constructively liable for the debt secured. *Qr.*

2. That the claims between the co-sureties having become complicated by sundry payments and receipts, and on adjusting which, accounts would be necessary to show the true payments, made a case for equity.

3. That a surety who had become constructively liable at law to the principal creditor by charging himself with sums he had not in fact received, would not be concluded in equity as related to his co-surety originally liable for contribution by his admission, where a remedy suitable to the circumstances of the case would be extended.

4. It being admitted that there was a balance due from *S*. the first guardian, for which *H*. and *F*. were both liable, that *H*. had not received it in fact, and *S*'s estate insolvent, made a case for contribution, and against equity for *F*. to endeavour to recover the whole amount of the judgment recovered against him and *H*.

5. When a party applying for an injunction admits that he owes a balance to the person to be enjoined, the court may require such balance to be brought into court to be paid accordingly.

Where a guardian dies insolvent, and his surety is appointed his successor, and charges himself with the balance due the ward from the first guardian, this makes the second guardian liable to the ward.

Where a person in one character is debtor, and the same person in another character is creditor, the law regards the debt as paid by the debtor capacity to the creditor.

Where a man has several capacities, and is found in possession of property, the law will attach the possession to the capacity in which of right it ought to be held.

So also, where having different capacities, he executes an authority delegated to him in one of those capacities, the law will attribute the act to the proper authority, although the person does not profess to exercise it in virtue of that particular power.

Appeal from the equity side of *Carroll* County Court, from an order continuing an injunction.

The bill in this cause was filed by the appellee on the 1st October, 1845, and alleged that about the year 1820 *Jacob Snyder* was appointed by the Orphans court of *Frederick* county, guardian to *Matilda Flickinger* an infant, who has since intermarried with one *Reuben Rachner*, and that your orator and one *John Flickinger* became the securities in the guardian bond of said *Snyder*, which bond was executed on the 1st May, 1820; that the said *Jacob Snyder* died about the year 1825, and that at the time of his death he was indebted as guardian as aforesaid to his said ward, in the sum $2,036 31. That after the death of the said *Snyder* it was believed and understood by the said *Flickinger* and your orator, upon consultation between them on the subject, that they would be compelled to lose a considerable amount of the sum so due from said guardian to said ward, as they believed the estate of the said *Snyder* to be insufficient to pay his debts, and it was thereupon agreed by the said *Flickinger* and your orator, that he the said *Flickinger* should become the guardian to the said ward, and that your orator should become his security in the guardian bond, and that they should be equally responsible for the amount of said account settled by said *Snyder*, and should pay the amount thereof in equal proportions, whenever the same should be demanded by said ward after she had attained majority, and that the said *Flickinger* should recover from the estate of said *Snyder* whatever he might be able, which should be applied to the payment of said amount to said ward, and that the deficiency which would be the loss to your orator and said *Flickinger* should be equally borne by them in equal and even proportions; that the said *Flickinger* and himself went together to *Frederick city* for the purpose of carrying out the aforesaid agreement, by applying to the said Orphans court for the appointment of *Flickinger* as guardian as aforesaid, and that after they had reached *Frederick* the said *Flickinger* proposed to your orator, that as your orator was more conversant with the business of the kind, he, your orator, should become the guardian, and that he, *Flickinger*, would become his security, and that the same agreement should exist, that is

to say, that he the said *Flickinger* and your orator, should be equally bound for the amount due to said ward, and should pay the same in equal proportions as aforesaid, and that the amount which might be recovered from the estate of said *Snyder* should be for the equal benefit and relief of said *Flickinger* and your orator; and your orator states that it was distinctly understood and agreed between them, that their liability as securities in the bond of said *Snyder* should be in no degree altered or changed, and that the arrangment aforesaid was with the view, and for the purpose of having for themselves the benefit of the time which would elapse before the coming of age of the said ward, and also for the purpose of recovering whatever they might be able from the estate of said *Snyder* before they could be called on to pay said money. That in pursuance of the agreement aforesaid, himself and the said *Flickinger* applied to the said Orphans court for the appointment of your orator as guardian as aforesaid, and that your orator was appointed by said court guardian as aforesaid, sometime in the early part of the year 1826, and on the same day on which his bond as guardian bears date; and that on the 8th *February* in said year he entered into bond as such guardian with the said *John Flickinger* as security, and that two securities being required by said Orphans court, one *John Daugherty* who was present, offered to become the remaining security, and did so become. That afterward, to wit: on the 16th May, 1831, another bond was given by your orator as guardian as aforesaid, in which bond the said *John Flickinger* and *John Slyan* became securities, and your orator alleges and states, that at the time the said last mentioned bond was executed the same agreement and understanding aforementioned existed between said *Flickinger* and your orator, and was distinctly and expressly recognized by said *Flickinger;* and your orator further shews to your Honors, that he proceeded to recover whatever amount he could from the estate of said *Snyder*, and that he has at different times, recovered and received from the administrator of said *Snyder*, in all, the sum of $1588 10. That the estate of said *Jacob Snyder* the former guardian as aforesaid, was and

is insolvent. That in pursuance of the understanding and agreement aforesaid, between said *Flickinger* and your orator, he proceeded soon after he had been appointed guardian as aforesaid, to settle an account in the Orphans court of *Frederick* county aforesaid, in which account he charged himself with the knowledge and concurrence of the said *Flickinger*, with the whole amount due from said *Snyder* to said ward, although at that time he had not received one cent of said amount, and that he proceeded from time to time to settle accounts in said Orphans court, charging himself with the whole of said amount, and the accumulating interest thereon, until the 26th February, 1835, when he settled a final account in said Orphans court, when the said sum with the interest thereon, amounted to the sum of $3905 67.

And your orator further shews to your Honors, that although he has received and recovered from the estate of said *Snyder* in all but the sum of $1588 10, he has paid to the said ward since she had attained majority, at various times, from the 2nd February, 1839, to the 21st November, 1842, various sums amounting in the whole, with interest up to the said last mentioned day to the sum of $2779 82, out of the monies which he had so received as aforesaid from the administrator of said *Snyder*, and out of his own private funds, and that not one cent of said sum has been paid by said *Flickinger;* that the *State of Maryland,* for the use of the said *Reuben Rachner* and *Matilda* his wife, the said *Matilda* being the ward aforesaid, recovered at the April Term of *Carroll* county court, 1845, a judgment against your orator and the said *John Flickinger,* for the sum of $3129 75 with interest, &c. of the said amount so due to her as aforesaid, after having allowed all the payments so made to her as aforesaid by your orator, that since the rendition of said judgment he has paid thereon, in all the sum of $1270 00; that on the 9th July, 1845, a writ of *fieri facias* was issued on said judgment, under which said writ the sheriff of *Carroll* county seized and levied on the personal and real property of the said *John Flickinger* and your orator for the satisfaction of said judgment, and that after

said seizure and levy, and advertisement of sale of the prop-
erty levied on, the said writ of *fieri facias* was countermanded
by the order of the said *Reuben Rachner*, all which will
appear from a copy of said writ, and the sheriff's return thereon
endorsed; and that afterwards, to wit, on the 16th August,
in the year aforesaid, a pretended assignment of the said judg-
ment was executed by the said *Rachner* and wife, for whose
use the said State sued the said *John Flickinger*, as will appear
from a copy of said pretended assignment herewith filed; and
also a copy of an agreement between said *Reuben Rachner*
and said *Flickinger*, herewith filed.

And your orator states that a particular statement of the
amounts so paid by him as aforesaid, with the interest thereon
up to the date of the said judgment, and of the amounts paid
by him since said judgment, as well as the amounts so received
by him from the estate of the said *Snyder*, shewing the con-
dition of the account as between the said *Flickinger* and your
orator is herewith filed; that the said *Flickinger* pretends that
by virtue of the aforesaid assignment of said judgment, and
the act of assembly of October. session, 1763, chap. 23, sec.
8, he is entitled unto and can have in his own name as assignee,
the same execution against your orator as the principal debtor
in said judgment, that the plaintiff in said judgment might or
ought to have had, if said assignment had not been made.
And your orator is informed and verily believes, and therefore
states that said *Flickinger* is about to sue out of *Carroll* county
court, as a court of law, an execution against your orator for
the whole amount of said judgment, including interest and
costs, after deducting therefrom and giving credit for the said
sum of $1270 00, so paid by your orator as aforesaid, since
the date of said judgment. Whereas your orator is advised
and humbly insists that the said pretended assignment of said
judgment not having been made by the legal plaintiff on the
record, does not entitle the said *Flickinger* to sue out an
execution as aforesaid and also that the facts, agreements and
circumstances hereinbefore set forth in equity and good con-
science, debar the said *Flickinger* from having any execution

whatever against your orator on said judgment, and that whatever may be the relative rights of said *Flickinger* and your orator, as regards principal and security in the aforesaid guardian's bond on which judgment has been obtained as aforesaid, the simple fact, that your orator as guardian charged himself with the whole amount of money due the said ward from *Snyder,* the said former guardian, and thereby exonerated as well the said *Flickinger* as your orator, from great loss and responsibility as securities in said guardian bond as aforesaid, is in equity and good conscience a defence to your orator against all claims by said *Flickinger,* founded upon his being only a security in the aforesaid guardian bond of your orator, as also the additional fact that after the said *Flickinger* had refused as aforesaid to become the guardian of said ward, your orator at the instance and request of the said *Flickinger* assumed the said guardianship, and charged himself in the said Orphans court of *Frederick* county, with the entire amount of the indebtedness of the said former guardian for the express purpose of relieving said *Flickinger,* as well as your orator, from loss and responsibility, and immediate accountability as securities of the said former guardian, and upon the express agreement between your orator and said *Flickinger,* that he would contribute equally with your orator in making up the amount which might be coming to said ward by reason of the insolvency of the estate of said *Snyder* after said ward should have arrived at age.

And your orator charges that for the said *Flickinger* to proceed to recover from your orator by execution on said judgment, the money which he may have paid on said judgment, would be to practice a fraud on your orator, which the principles of equity forbid, and would be also in violation of said *Flickinger's* agreements solemnly entered into with your orator, but which your orator cannot enforce at law, in case said *Flickinger* is permitted to sue out execution as he is about to do against your orator on said judgment, unless enjoined.

The complainant filed with his bill various exhibits, viz:

The third account of *Jacob Snyder* as guardian to *M. F.,*

9    v.5

showing a balance due the ward, 4th November, 1822, $2036 31.

The guardian's bond of 8th February, 1826, executed by complainant and defendant, and one *John Daugherty.*

The guardian's bond of 16th May, 1831, executed by complainant and defendant, and *John Slyan.* Penalty $6000.

The account of *John Snyder,* administrator of *Jacob Snyder,* 26th November, 1825, balance $798 29. 2nd account, balance $329 01.

The first account of *Peter Hull* as guardian, 4th November, 1825, balance $2276 14, due his ward.

The eighth and final account of same, 26th February, 1835, balance due the ward, $3905 67.

Receipts of *Matilda Flickinger,* 1839, $830. 1842, $63. $155. $1539 50.

Judgment. *The State use of Reuben Rachner and Matilda* his wife vs. *Peter Hull* and *John Flickinger,* on bond of 16th May, 1831, for $3129 75 and costs. Cr.—By *Peter Hull,* $900, $250. 25th August, 1845, balance due on this judgment assigned to the use of *John Flickinger;* 9th July, 1845, *fi. fa.* issued; 26th July, 1845, *Peter Hull* pays $120 on the *fi. fa.,* and plaintiff countermands the writ.

Assignment of judgment, *R. R. & wife* to *Peter Hull,* 16th August, 1845. It was then agreed that the assignment to *John Flickinger,* conveyed to him the entire amount of the plaintiff's claim, as per the judgment, except the sum of $120, now in the sheriff's hands, and credits entered on the judgment.

Statement of claims paid by complainant as guardian to *M. F.,* and of the receipts by him from the estate of *Jacob Snyder.* Payments, $4418 80. Receipts, $2791 35.

The answer of *John Flickinger* admitted, that about the year 1820, *Jacob Snyder* was appointed guardian to *Matilda Flickinger,* then an infant, and who has since intermarried with *Reuben Rachner;* and that the said complainant, and this defendant, became the securities in the guardian bond of said *Snyder.* He admits that the said *Jacob Snyder* died about the year 1825, in the *State of Pennsylvania,* where he resided

at the time of his death; and at that time he was indebted to his ward in the sum of $2036 31. But this defendant saith it is not true, that after the death of the said *Snyder*, it was believed and understood by this defendant and said complainant, upon consultation between them on the subject, that they would be compelled to lose a considerable amount of the sum so due from said guardian; or, that they believed the estate of said *Snyder* to be insufficient to pay his debts; or that it was thereupon agreed by this defendant and the complainant, that this defendant should become the guardian to the said ward, or that the said complainant should become his security in the guardian bond; or that they should become equally responsible for the amount of the account settled by said *Snyder;* or should pay the amount thereof, in equal proportions, whenever the same should be demanded by said ward after she had attained majority, or at any other time; or that this defendant should recover from the estate of said *Snyder* whatever he might be able, to be applied to the payment of said amount to said ward ; or that any deficiency should be equally borne by the said complainant and this defendant, in even and equal proportions. He further denies that he and the said complainant went together to *Frederick city*, for the purpose, or with a view of carrying out any agreement whereby this defendant was to become guardian of said ward; or that the said complainant was to become security for this defendant in his bond as such guardian; or that they, the said complainant and this respondent, went together to *Frederick city*, for the purpose, or with a view of applying to the *Orphans court* of *Frederick* county for the appointment of this defendant as guardian to said ward; and this defendant denies and saith, that it is not true that he ever proposed to the said complainant, that he, the said complainant, should become the guardian to said ward; and that this defendant would become his security; or that when this defendant did become security for the said complainant in his guardian bond as guardian of said ward, to wit: on the 8 Feb., 1826, that any agreement existed whereby this defendant and said complainant should be equally bound for the amount due

to said ward; or that they should pay the same in equal pro-
portions, as stated in the complainant's bill; or that the amount
which might be recovered from the estate of said *Snyder*
should be for the equal benefit and relief of this defendant and
the said complainant; or that there was any understanding or
agreement between them, the said complainant, and this defend-
ant, with regard to their liability as securities in the said guar-
dian bond of said *Snyder;* or that this defendant ever expected
any benefit or advantage by becoming security for said complain-
ant in his guardian bond aforesaid.   This defendant avers, that
during the period which elapsed between the death of said
*Snyder*, and the day on which this defendant accompanied said
complainant to *Frederick city*, for the purpose of becoming one
of his, the said complainant's securities, in his first guardian
bond, this defendant and said complainant had but one con-
versation on the subject, and that occurred when the said com-
plainant, after said *Snyder's* death, called on this defendant, and
suggested that he, this defendant, might become the guardian
for said ward, and voluntarily offered to become one of this
defendant's securities, if he, this defendant, were disposed to
become such guardian; but this defendant said, he was not
acquainted with such business, and had no inclination to become
the guardian of said ward.   Whereupon, said complainant
expressed his willingness to become the guardian himself, and
requested this defendant to become his security; but this
defendant was not disposed to become security for the said
complainant as such guardian, and did not consent to do so until
said complainant represented to him that if he, the said com-
plainant, did become guardian, he could invest the money in
his, the said complainant's tan-yard, and extend his business,
and realize handsome profits, or he would buy land with it;
and that he was quite confident, that he, the said complainant,
could pay the money whenever it would be required to be paid
to the said ward; and that *John Daugherty* (who then resided
in the neighborhood, and was in good circumstances, and
a responsible man,) was willing to become one of his, the said
complainant's securities, in the bond which he, the said com-

plainant, would be required to give as such guardian as aforesaid, if this defendant would consent to become the other security. And that it was upon these representations, and at the solicitation of said complainant, that this defendant consented to become one of the securities in said complainant's guardian bond as aforesaid; and this defendant saith, that he consented to become security as aforesaid, on the condition that the said *John Daugherty* should become one of the securities, and that with this understanding, he, this defendant, went to *Frederick city* with the said complainant; but does not now recollect whether the said *Daugherty* went in company with them or not; but the said *Daugherty* was present when the said complainant entered into bond as the guardian of said ward, and became one of his, the said complainant's, securities, in said bond. This defendant further saith and avers, that he was never apprehensive or fearful of sustaining any loss in consequence of his being security for said *Jacob Snyder* in his guardian bond; for he was under the impression and belief, that the said *Snyder's* estate was solvent, and the said complainant, after he became the guardian for said ward, frequently represented to this defendant, that the said *Snyder's* estate was solvent, or very nearly so; and this defendant, before he became security for the said *Jacob Snyder* in his said guardian bond, and consideration of his becoming such security, he was indemnified in the sum of $3200, by the joint or joint and several bond of said *Jacob, Henry, and John Snyder*. But after the death of *John Daugherty*, who was co-security with this defendant in the guardian bond, to wit: about the year 1831, there being a report, &c.; and the said complainant proposed to this defendant, that he, the said complainant, would give a bond in which one *John Slyan*, who was then in said city, would become co-security with this defendant—to which proposition this defendant acceded, and the bond was accordingly executed. And this defendant denies that any agreement or understanding existed between said complainant and this defendant, when the bond last aforesaid was executed, whereby they were to be equally liable or responsible for any loss that

might be sustained in consequence of the insolvency of the estate of said *Jacob Snyder*, or otherwise; or that this defendant was other than a security for said complainant in said bond.

And this defendant further answering, saith, that he does not know what amount the said complainant received or recovered from the estate of said *Snyder*, the former guardian of said ward: but states, that it appears from the account and distribution stated by auditors, duly appointed by the Orphans court of *Adams* county, in the State of Pennsylvania, that the said auditors allotted, assigned, or directed to be paid to the said complainant as guardian for said ward, the sum of $2096 57, by *John Snyder*, the administrator of said *Jacob Snyder*.

And this defendant has been informed, and believes, and so states, that the said complainant received or recovered the aforesaid sum from the estate of the said *Jacob Snyder*. That the said complainant also received the sum of $308 44, as guardian for the said ward, from this defendant, as executor of *Andrew Flickinger*, late of *Frederick* county, deceased. That he was not advised or informed of the said complainant's settlement or settlements with the said Orphans court of *Frederick* county, as guardian of said ward, and denies that it was with the knowledge and concurrence of this defendant that the said complainant charged himself with the whole amount due from said *Snyder* to said ward; but this defendant believes that he did so, under the impression that said *Snyder's* estate was perfectly solvent; and this defendant does not know whether the said complainant had then received anything from the said *Snyder's* estate or not. That he does not know, but believes and admits that the said complainant paid to the said ward since she attained majority, &c.

This defendant further answering saith, that he admits that the said *Reuben Rachner* and *Matilda* his wife, in the name of the *State of Maryland*, for their use, recovered at the April term of *Carroll* county court, 1845, a judgment against the said complainant and this defendant for the sum of $3129 75, with interest, and the balance due her from the said complain-

ant as her guardian as aforesaid, after allowing all the payments which the said complainant had made to her as aforesaid; and this defendant states that the suit in which the aforesaid judgment was obtained, was brought on the aforesaid guardian bond of said complainant, in which this defendant and the aforesaid *John Slyan* were securities for the said complainant, as this defendant has hereinbefore stated; and this defendant admits that since the rendition of said judgment, the said complainant has paid thereon, in all the sum of $1270 00. And this defendant admits, that on the ninth day of July, 1845, a writ of *fieri facias* was issued on said judgment, and that under said writ the sheriff of *Carroll* county seized and levied on the personal and real estate of said complainant and this defendant, and that the said property was advertised by the said sheriff, and that after the said levy and advertisement, the said writ of *fieri facias* was countermanded by the order of said *Reuben Rachner.*

And this defendant further answering, saith, he denies that there was any pretended assignment of said judgment to this defendant by the said *Reuben Rachner* and wife, but this defendant states and avers that inasmuch as his personal and real property was seized and levied upon and advertised for sale by the sheriff of *Carroll* county as aforesaid, this defendant to save his said property from sacrifice, as said complainant's security, paid on the whole balance then remaining due on said judgment and writ of *fieri facias,* to wit: the sum of $2378 75; and in consideration thereof, and of this defendant being only security for said complainant in the bond on which said judgment was obtained as aforesaid, and by virtue and force of the act of assembly in such case made and provided, the said *Reuben Rachner* and *Matilda Rachner* his wife, the said *Matilda* being the ward aforesaid, executed an assignment of said judgment to this defendant; that inasmuch as the said complainant had paid to the sheriff aforesaid the sum of $120 00 after the aforesaid writ of *fieri facias* came to the hands of him, the said sheriff, this defendant and the said *Reuben Rachner*, with a view to avoid any error or mistake,

signed an agreement setting forth that the said complainant should have credit for the said $120 00, as well as the several sums which the said complainant had paid on the said judgment before the said writ of *fieri facias* was issued.

And this defendant states that he is advised that he, this defendant, by virtue of the aforesaid assignment and the act of assembly of 1763, chap. 23, is entitled unto and ought to have in his own name, or in the name of the *State of Maryland*, for his use, the same execution against the said complainant as the said *R. R.* and *M. R.* his wife, or the said *R. R.* and *M. R.* his wife in the name of the *State of Maryland*, for their use, might or ought to have had, the said assignment having been recorded in *Carroll* county court, it being the same court in which the said judgment was rendered or obtained : and this defendant is advised and humbly insists, that inasmuch as he, this defendant, was security for the said complainant in the bond on which the said judgment was obtained ; and inasmuch as he, this defendant, paid the balance, and on the said payment and the plaintiffs in the said judgment has assigned the same to him, this defendant, in consideration of his having so paid them said balance, this defendant is entitled to and ought to have execution for the said balance still remaining unpaid by the principal debtor, who is the said complainant. And this defendant prays that the injunction heretofore granted in this cause may be dissolved.

Various exhibits were filed with this answer.

At the September term, 1846, the cause having been submitted on a motion to dissolve the injunction,

The county court, DORSEY, C. J., and BREWER, A. J., passed the following order:

The bill states that the complainant and defendant became sureties for one *Jacob Snyder*, as guardian for *Matilda Flickinger*; that *Snyder* died indebted to his ward in the sum of $2036 31¼, for which sum the complainant and defendant were equally responsible, and which they would eventually have to pay to the extent of the insolvency of the estate of said *Snyder*. That under these circumstances it was agreed between the complain-

ant and defendant, that the complainant should become the guardian for said *Matilda Flickinger*, with the defendant as his surety, for the purpose of recovering from the estate of said *Snyder* so much of said debt as it would be able to pay, and appropriating it to the relief of said sureties, each of them undertaking to pay his proportion of the deficiency, and that in pursuance of said agreement, the complainant became such guardian with the defendant, as one of his sureties, passed an account charging himself with the whole of his ward's estate, as if received. That the complainant afterwards recovered from *Snyder's* estate, a part of the debt, and paid over divers sums of money to the ward after she became of age, leaving, however, a residue, for which the ward and her husband recovered judgment against the complainant and his sureties in *Carroll* county court, and upon which judgment, he, the complainant, paid other sums of money, and a *fi. fa.* having been issued and laid upon the defendant's property, the defendant paid what remained due upon the judgment, took an assignment of it under the act of 1763, and was proceeding to levy the whole on the complainant, without regard to what was due on his original responsibility as one of the sureties of *Jacob Snyder*. The answer of the defendant, admits his original responsibility as one of *J. Snyder's* sureties, that the complainant became the guardian after his death, and received and paid the sums of money stated in the bill, but denies that the complainant became guardian at his instance, or that he agreed to pay his proportion of the deficiency; on the contrary, the defendant professed to have felt no interest in the matter, as he alleges that he had a good bond of indemnity which would have secured him from any eventual loss, or a deficiency of *Snyder's* estate, which is admitted.

We do not see upon what ground the defendant claims a dissolution of the injunction. His original, co-equal, responsibility, with the complainant as one of the sureties in *Snyder's* bond, is admitted; and how is he released from that responsibility? Although he did not agree that the complainant should become guardian and charge himself with the whole debt due

from *Snyder*, that they might by the delay, be enabled to recover from *Snyder's* estate before they should be compelled to pay, he was equally benefitted by it as if he had so agreed, and can hardly mean to contend, that the complainant by charging himself with the whole amount, assumed the whole responsibility, to his the defendant's exoneration, in the face of the fact, that he had then received none, and subsequently received only a part. We are not aware of any principle of law or equity that would release him on such grounds. That he has a bond of indemnity, cannot release him. If that could have any effect in the case, it would rather tend to create an equity in favor of the complainant. An undue importance seems to be attached to the alleged agreement of the defendant. His responsibility as a co-security was antecedent to, and entirely independent of it, and has not, so far as we can perceive, ever been discharged. Injunction continued until the final decree or further order.

The defendant appealed to this court.

The cause was argued before Archer, C. J., Chambers, Spence, Magruder and Martin, J.

By Palmer for the appellant, and

By W. P. Maulsby and Reverdy Johnson for the appellee.

Chambers, J., delivered the opinion of this court.

The bond of *Hull*, as guardian, and the fact of his charging himself with the amount due from *Snyder*, the former guardian to whom he was security, made him responsible to the ward for that amount. Where a person in one character is debtor, and the same person in another character is creditor, the law regards the debt as paid by the debtor capacity to the creditor.

This is on the same principle which governs in the case where a man has several capacities, and is found in possession of property, the law will attach the possession to the capacity in which, of right, it ought to be held; so also, where having

various capacities, he executes an authority delegated to him in one of those capacities, the law will attribute the act to the proper authority, although the person does not profess to exercise it, in virtue of that particular power. It is said that this being, so far as the ward was concerned, equivalent to an actual payment by *Hull*, would entitle *Hull* to claim contribution from *Flickinger*, if at all, at that time, and by a suit at law. How far a principal in a bond, who had charged himself in the Orphans court with the receipt of a sum of money, could in a court of law, recover against a security on his own bond, upon the ground that the money was not received in fact, but only charged because both the principal and that surety were co-sureties of the former debtor, and therefore equally liable, might be a very questionable matter. Certainly the learned counsel has not produced such a case, and it is believed such an one cannot be produced. The case is very far from being an ordinary case of contribution. If suit at law would not have been entirely defeated by showing that the plaintiff was principal in the new bond, and the defendant his surety, and that the plaintiff had admitted the receipt of the whole sum, yet clearly, the defendant could, under the circumstances of this case, have restrained the plaintiff from enforcing the payment of the one-half of the gross amount, until it was ascertained in a due course of administration, how much *Snyder's* estate would pay, and of course how much the ultimate loss would be, especially, as in the meantime no actual advance of the capital was required, and no actual loss sustained by the plaintiff.

It is a case now complicated by sundry payments and receipts running over quite a long period of time, and in adjusting which, accounts between the parties will be necessary to ascertain the true merits of their respective claims, if indeed the complainant shall ultimately be found to have a claim.

It is therefore the proper subject for a bill in Chancery, where the technical objection of the admission in the account passed by the complainant will not conclude him, and where a

thorough examination of all the accounts can be had, and an opportunity afforded of proving the agreement, and remedy extended to suit all the circumstances of the case. It has been intimated that perhaps in equity, no claim for contribution could have been enforced at any period prior to the actual payment of the money by the appellee, the guardian. In that view of the case, there would be no pretence to allege that the claim was stale, but upon the ground even that a proceeding could have been instituted as soon as the appellee charged himself with the debt, yet the period has not elapsed which is considered as evidence of payment. That period has been fixed at twenty years, and ought not to be shortened, except under peculiar circumstances; whereas in this case, there are peculiar circumstances to account for the delay, and of course to forbid the making the exception.

The case being before us on bill and answer, on motion to dissolve the injunction, must in reference to that motion be regarded as if there was no such agreement between the parties at the time *Hull* became guardian; the answer of defendant, having positively denied its existence. It is not however denied that there was a balance due from *Snyder*, for which both were equally liable; that *Hull* charged himself with this amount, without in fact receiving it, and that *Snyder's* estate was partially insolvent. These facts alone, exclusive of any agreement, would entitle *Hull* to contribution, and therefore would make it inequitable for *Flickinger* to issue an execution for and recover the whole of the balance paid by him on the ward's judgment. The injunction therefore was properly continued to restrain him from such proceeding.

It is said that by the authority of 7 *G. & J.* 306, *Planters Bank & Hodges*, this court have required the injunction to go only for the amount claimed as a deduction, here the appellee claims "nearly the whole," the admission of a balance is in very equivocal terms, and a readiness is alleged to pay what may be found due. So far however as he admits a balance due to *Flickinger*, the court below should have passed an order directing the amount to be brought into court to be paid

Flickinger *vs.* Hull.—1847.

accordingly, and doubtless would have done, and will still do so at any time on a petition by the appellants to that effect.

It is not in this case a sufficient ground on which to dissolve the injunction. The answer sets up various matters by way of defence, but they are not responsive to the bill; and cannot of course affect the question of dissolution which is now before the court.

A question has been made in the argument on the conformity of the assignment stated in the proceedings to have been made by *Rachner and wife*, who were the beneficial plaintiffs in the judgment obtained against these parties on the guardian bond, to the provisions of the act of 1763, ch. 23, but the view taken of the case has rendered an opinion on that question unnecessary.

On the whole, this court is of opinion that the bill does contain matter fit for the jurisdiction of the court, and entitling the complainant to an injunction, and that the answer does not entitle the defendant below, the appellant here, to a dissolution of that injunction.

DECREE AFFIRMED.

MAGRUDER, J., dissented, and delivered the following opinion.

This appeal is from an order of *Carroll* county court, sitting as a court of equity, continuing an injunction which had been granted to the appellee. Ought that injunction to have been continued?

If one of the allegations to be found in the bill of complaint had been admitted in the answer; if it could appear to us, that there was an agreement between the complainant and the defendant in the bill, that the former should be the guardian of the ward spoken of in the proceedings, after the death of the first guardian, should charge himself in the Orphans court with the amount of the ward's estate, which was in the hands of the first guardian at the time of his death, and that any loss thereafter to be sustained by reason of the insolvency or waste of assets, of the first guardian's estate, should be equally borne by these parties, (the securities in the first guardian's bond,)

the complainant's case in equity might have been a very different one, from that which in deciding this case we are bound to suppose it to be. Whatever cause others might find to complain of such an arrangement, and the settlements in consequence of it, yet *inter se*, in any controversy between those parties, and in which no other person had an interest, the settlements by the complainant in the Orphans court, would perhaps be no obstacle to the relief which is sought by him in this case.

This allegation is denied in the answer, and it may be proper to remark here, that before the argument in the court below, the complainant obtained a commission to take proof, as authorized by the act of 1835, ch. 380, sec. 8, "to be considered in connection with the bill or petition, and answers in the cause." Having thus been afforded an opportunity of sustaining his allegations by proof, and failed, we may well suppose that the matter alleged is incapable of proof. At all events, at this time and upon this appeal, we are bound to assume that it is utterly unfounded.

The case then may be stated in these words: In the year 1820, the Orphans court of *Frederick* county appointed one *Jacob Snyder* the guardian of *Matilda Flickinger*, at that time an infant. The complainant and defendant became his securities in the bond executed by him as guardian. This guardian took possession of his ward's estate, and was in the possession of it when he died in 1825. The complainant thereupon was appointed the guardian, and gave bond as such, with the defendant and another as his securities. In the following year (1826) the complainant as guardian, settled his first account with the Orphans court, and charged himself with the whole amount of the ward's estate, which was in the hands of the first guardian at the time of his death, and as being then in the hands of himself, the second guardian. Another bond was required from and given by this second guardian in 1831, and in that bond a different person, and the defendant in Chancery, became the securities. The ward became of age in or before 1835, and at different periods the complainant paid to her sums

of money, still leaving a balance due to her; and the same year that she came of age, this guardian settled his *eighth*, being his final account, and therein stated the balance which he still admitted to be in his hands, due to his ward. Failing to pay to her this balance, thus ascertained to be due to her, a suit was instituted on the last bond for the use of the ward and her husband, against the complainant and defendant, and a judgment was obtained thereon in 1845, for the sum ascertained as before stated to be due to her, after deducting any payments made by the guardian subsequently to the last settlements. The amount due on the judgment the defendant has been compelled to pay, and having paid it, obtained an assignment thereof.

Complainant says, that he paid more money to the ward than the defendant in the court below, and insists that each is bound to pay one-half, because they were securities for the first guardian. He asks for an account, and that the defendant below shall be restrained by injunction from proceeding upon the judgment obtained on the bond in which the complainant was principal, and the defendant in the court below only his security.

It is manifest then that the complainant must insist that these payments, though made in satisfaction of the judgment, were not on account of the bond, whereon the judgment was obtained. He insists that the money was in truth still due from the estate of the first guardian, and for that ward's estate, (after crediting some payments made to himself by the representative of the first guardian,) the first bond in which complainant and defendant were co-securities, was alone answerable; that the second bond, upon which the ward obtained a judgment, never was responsible.

This then is an attempt by the complainant to impeach a settlement made by himself in the year 1825, and verified at the time by his own affidavit, confirmed by him in seven later settlements voluntarily made by him, verified also by as many affidavits, when it is not and cannot be pretended by him, that any of these settlements was the result of fraud, surprise, mis-

take, misapprehension, or ignorance, and this attempt is made upwards of twenty years after the first settlement. If this was every thing that could be said in opposition to this attempt to impeach these settlements, it surely would be quite sufficient in a court of equity, and indeed, every where. Of courts of equity it has been said, that in resisting and defeating stale demands, they sometimes act in analogy to the law; but they act too upon their own inherent doctrine of discouraging for the peace of society antiquated demands, by refusing to interfere where there has been gross laches in prosecuting rights, or unreasonable acquiescence and delay in the assertion of adverse rights. See 2nd *Story Eq.*, sec. 1520, and the various authorities to which reference is there given. If these settlements with the Orphans court, prepared by himself, and verified by his own affidavit, speak the truth, then there is no pretext for the relief which is sought. If such an allegation had been made at the time, or shortly after the first settlement, it is possible that the most conclusive proof could have been adduced that the complainant did actually receive of the representatives of the first guardian, the money with which he so often charged himself as being in his hands. Receipts might at the time have been obtained, and in the course of time lost. And why in this individual case, should they have been preserved? What motive would the representative of the first guardian have to retain for upwards of twenty years, receipts which would only prove that of which the party who gave the receipt had been so careful to furnish *record* evidence within the reach of all? How often has it been remarked, that courts of equity refuse relief to stale demands, even in cases where no statute of limitations could be pleaded? There is no statute of limitations to bar the recovery of a legacy; but if not claimed within twenty years, the payment of it will be presumed, and no account at such a distant period can be demanded in equity by a legatee or distributee. The length of time establishes the fact, of which, but for the lapse of time, there is no evidence. This however is not all. We are now required to believe, that for the estate of this ward, (except a

portion of it,) the second bond was not answerable. Yet upon the second bond, a judgment has been obtained against the defendant as security for the complainant for the whole, when such judgment could not have been obtained, but for these false statements by the principal, and his concealment of what he now says is the truth, until his security had been compelled to pay the money, due, not upon the second, but upon the first bond. If the facts were so, then the defendant has been most shamefully defrauded, and by nobody but the complainant, of every indemnity which may have been given to him in order to induce him to become a security in the first bond. Yet more : if in equity it is decided, that the settlements are nullities, what is to become of the judgment, and the money that was received in satisfaction of it, from the defendant in the court below? Is the evidence to be demolished, when wanted by the security, and yet the judgment obtained against him upon that evidence (furnished by the principal) to remain untouched?

It may be confidently affirmed, that no attempt is ever successfully made in a court of equity, to correct an error wilfully made by the party, asking for the correction for his benefit exclusively, and when by the correction an innocent person is to be prejudiced. A man is not at such times as he pleases, to have the benefit of the truth, when others have been or may be injured by his wilful suppression of it. A man cannot be allowed to rely even on his own negligence for his own benefit. A concealment of title will sometimes operate a forfeiture of it, as was shown by the authorities cited in this court in the case of *Bowly & Lamott*, 6 *H. & J.* 500. But in the case before us, a conclusive answer to every thing in the bill of complaint (expunging that part of it which is expressly denied,) is *nemo suam turpitudinem allegans est audiendus*.

In deciding this case, it is not necessary to enquire, whether if these statements were false, the first bond was ever discharged. It may be that the ward ought to be allowed to have had a remedy on the first bond, though if a suit had been instituted upon that bond, it is difficult to conjecture how it could have been supported, if the settlements had been pro-

duced in proof, that all which was in the hands of the first guardian had been paid over by his own acknowledgment, to the only person who was authorized to receive it. We are not enquiring what were the ward's rights, and as she has sued upon the second bond, recovered a judgment, and that judgment has been satisfied, it would be difficult for her now to claim any thing on the first bond. It is certain that the two bonds could not be liable to her at the same time for the whole estate.

Of course it is not designed to say now, that upon a final hearing, the complainant in this case will not be able to prove that he is entitled to relief. The question at this time is, whether upon this bill and answer, the injunction which has been issued ought to be dissolved? If the complainant should hereafter show he is entitled to any relief, a dissolution of the injunction at this time will not hinder him from obtaining it. At present, we must consider this as an attempt by him to prevent his security from recovering back money which he has been obliged to pay for him, under the pretext that he also has a claim against his own security, as co-security with him in a bond given by another person for the performance of duties which that person had undertaken. To maintain his right to relief, he must show not only the case alleged, but if the estate has not been paid over by the representatives of the former guardian, that no part of it has been lost by reason of any neglect of duty by him, the second guardian. The facts stated in the answer, if shown, will materially prejudice the complainant. "It is true," as *Story* observes, "that it is impracticable to limit the power and discretion of courts of equity, as to the particular cases in which injunctions shall be granted and withheld." It is true also that "the exercise of it is attended with no small danger, both from its summary nature and its liability to abuse." Injunctions to stay the execution of judgments at law, ought not to be obtained with too much facility, yet unquestionably they are frequently granted most improvidently, and it seems to require but ordinary skill, so to frame a bill, as not only to obtain it, but to prevent its dissolution until final hearing, when oftentimes it is dismissed,

because there is not a particle of equity in the complainant's case. According to the answer, too, it would seem that the party practised a fraud upon the court, in suppressing facts, which, if disclosed, might have deprived him of all title to relief—that there has been *suppressio veri*, as well as *suggestio falsi*. It is true, those parts of the answer are not strictly responsive to the bill, but this is because of the omission by the complainant himself, if the defendant is to be believed, to disclose all the material circumstances of the case, because the bill itself does not expressly authorize the defendant to put the court in possession of some of these circumstances.

The act of 1836, ch. 380, certainly does change the rules by which our Court of Chancery had previously been governed in disposing of motions to dissolve injunctions. They are not now necessarily to be decided upon bill and answer; so it is in England, as it appears by the cases referred to, 1 *Swans.* 254, (note b.) In *Maryland*, these rules are not quite so inflexible as they are usually supposed to be. See 1st *Bland*, 137. An injunction ought not to be a mere contrivance for the hindrance and delay of justice. In bills for an injunction, *denials* are sometimes to be deemed as necessary as *averments*. In continuing, as well as in granting injunctions, it is to be remembered that the injunction power ought to be exercised with extreme caution, or it will be made an instrument of oppression and irreparable wrong. "There is," said *Justice Baldwin*, (*Baldwin's C. R.*, page 218,) "no power, the exercise of which is more delicate, which requires greater caution, deliberate and sound discretion, or is more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of equity that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages. If it issues erroneously, an irreparable injury is (often) inflicted, for which there can be no redress, it being the act of the court, not of the party who prays for it."

Leaving then the complainant to his remedy, if upon a final hearing he can show that he is entitled to relief, it seems to

be but justice, that the appellant should be left at liberty to issue an execution upon the judgment, (to which the complainant ought not now to be permitted to object,) to recover money which he has been compelled to pay, as security for the plaintiff, and which in that suit, he could not have been compelled to pay, but for the admitted, avowed misconduct of the complainant himself.

It may indeed be said, that as the complainant was security in the first guardian's bond, and responsible for the estate which came to the hands of the first guardian, he might be considered by operation of the law, in possession of the estate. This is not true. An executor, if appointed guardian of an infant distributee of the estate, after a final account has been or ought to have been passed, by operation of the law, is in possession of the estate thenceforward as guardian. *Watkins' Adm'r vs. The State, use of Shaw,* 2 G. & J. 220. There is however, a wide difference between an executor who is appointed a guardian, and a security of the first guardian. The case just referred to tells us that in the case of a joint executorship, if one of them is appointed guardian, the property cannot be considered in his hands until he actually receives it, because his co-executor is equally with himself entitled to the possession of the assets.

I am then of the opinion, that all the real equity in this case is denied by the answer, and the injunction ought to be dissolved.