## PATRICK H. PHILBIN vs. HERBERT J. THURN, USE OF VERNON COOK.

*Bond From Testamentary Trustee not Required by Code, Art. 16, sec. 221—Grantors in a Deed Erroneously Designated as Executors Instead of Trustees—Evidence—Attachment—Trial of Short Note Case.*

Trustees appointed by will with power to sell property are not within the provisions of Code, Art. 16, sec. 221, which provides that every trustee to whom any estate shall be conveyed to be sold shall file with the Clerk of the Court in which the deed or instrument creating the trust may be recorded a bond for the faithful performance of the trust, and that no sale made by such trustee without such bond shall be valid.

Real estate was devised to three trustees with unqualified power of sale. The same persons were appointed executors of the will without a power of sale. They executed a conveyance of certain land so devised as executors of the last will of the testator and signed the same as executors. *Held*, that the erroneous designation of the capacity in which the grantors executed the deed does not render it invalid but the deed conveys the title which the grantors had power to convey as trustees.

When at the request of a debtor a third person obligates himself to see that the debt is paid, then in an action by the creditor against the debtor evidence is admissble to show the circumstances under which such third person was induced to become responsible, and that his subsequent payment of the debt was not an extinguishment of the same, and that the suit is prosecuted in the name of the creditor for the use of the person so making payment.

If the defendant in an attachment against him as a non-resident or absconding debtor appears, the proper course is to try the short note case against him first, before the attachment case against the garnishee or the property attacked.

After the defendant in a non-resident attachment case has appeared and a verdict has been rendered for the plaintiff in the short note case, the entry of a judgment *in personam* on the verdict will not be arrested on account of the existence of any grounds for quashing the attachment.

Appeal from Baltimore City Court (DOBLER, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*Charles S. Hayden* and *Charles W. Wisner, Jr.*, for the appellant.

*Samuel J. Harman* and *Joseph N. Ulman*, for the appellee.

McSherry, C. J., delivered the opinion of the Court.

An attachment on original process was issued out oᶠ the Superior Court of Baltimore City at the suit of the appellee, Thurn, against the appellant, Philbin, as an absconding debtor, and later on the short note was amended by an entry of the case to the use of Mr. Vernon Cook.   Both the attachment and the short note case were thereafter on motion and affidavit of Philbin, who had previously appeared and pleaded, removed to the Baltimore City Court where the short note case was tried before a jury.   The trial resulted in a verdict for the plaintiff.   A motion in arrest of judgment was then filed. It was overruled and judgment was entered on the verdict and from that judgment this appeal was taken.   During the progress of the trial eleven exceptions were reserved.   The first and eleventh relate to rulings on the prayers, the remaining nine involve questions pertaining to the admissibility of evidence.

The suit is founded on a covenant to pay rent.   Under a lease executed by Neal O'Donnell and Hugh O'Donnell, of the first part, and the appellant Philbin, of the second part, the latter covenanted to pay to the former in equal semi-annual installments a yearly rent of six hundred dollars for certain premises situated in Baltimore City.   In July, 1903, Thurn acquired the title of the lessors, and the rent which fell due in September of that year and in March, 1904, not having been paid, an attachment was issued against Philbin as an absconding debtor.   Under circumstances which will be mentioned in a moment the cause of action was assigned to Mr. Cook, and the short note case was proceeded with in the name of Thurn for the use of Cook.   To avoid the prolixity and repetition that would unavoidably result from a separate discussion of each of the questions raised by the nine bills of ex-

ception which relate to the admissibility of evidence, a statement of all the material facts contained in the record—both those which are not challenged as well as those which are objected to—will be now made, and then the relevancy of the evidence and the propriety of the rulings on the prayers will be considered.

Hugh O'Donnell and his brother Neal O'Donnell, both of whom were residents of the city of New York, owned a property known as the "Mansion House" and situated on Gay street in the city of Baltimore. In February, 1898, they leased the premises to the appellant Philbin for the term of ninety-nine years, reserving a yearly rent of six hundred dollars. Hugh O'Donnell made his will and devised all of his real estate to his brother Neal.

He then died leaving Neal surviving him. Neal also made a will by which he gave and devised his property to certain trustees to sell the real estate at public auction or private sale, and on such terms as to them might seem just for the uses and purposes named in the will. The executors who were appointed by that will were the same individuals who were constituted trustees thereunder. After he had made his will Neal O'Donnell died. Both wills were duly admitted to probate in the Surrogate Court for the county of New York, and letters testamentary were granted to the executors named therein. Duly authenticated copies of the wills were recorded in the office of the Register of Wills of Baltimore City. A deed was executed in July, 1903, by William F. Clare, Andrew J. Toland and Patrick M. Carolan, conveying to the appellee Thurn the Mansion House property. Under this deed Thurn claims the rent reserved in the lease already alluded to. The deed purports to be made by the grantors *as executors* of the last will of Neal O'Donnell. Under the will of Neal O'Donnell the executors were not clothed with a power of sale, but the trustees, who were the same persons, were fully authorized to sell the real estate owned by the testator. A confirmatory deed signed by the same grantors in their capacity as trustees was subsequently executed. Whether those

deeds or either of them vested a title in Thurn is the main question in the case. In August, 1903, Philbin filed a bill in the Circuit Court of Baltimore City against the trustees named in the will of Neal O'Donnell and against Thurn alleging that he, Philbin, was a creditor of Hugh and Neal O'Donnell, and that the decedents owed him a large sum of money for his services in managing the Mansion House. He asserted that he was the owner of the leasehold interest, and he prayed for a sale of the property so that his claim might be satisfied out of the proceeds. The trustees answered the bill and disputed Philbin's ownership of the leasehold interest and denied the validity of his claim for compensation. Philbin insured the improvements against loss by fire and after the buildings were destroyed in the great disaster of February 7th, 1904, he collected the sum of ten thousand dollars, the amount of the policy which he held. A cross-bill was filed by the trustees setting up a claim to the proceeds of the insurance policy, and an injunction was granted restraining Philbin from withdrawing the insurance money from bank and restraining the bank in which it was deposited from paying it out. Finally the counsel of the various parties met to adjust the litigation by compromise. Mr. Vernon Cook represented Philbin, Mr. Harman was counsel for Thurn and Mr. Whelan for the trustees. It was agreed that Philbin should abandon his claim for compensation, that the trustees should relinquish their claim to the insurance money and their attack on the validity of the lease, and that Philbin should pay Thurn the two installments of rent then due and also the costs of the equity case. Philbin offered his check for the six hundred dollars due Thurn for rent, but Mr. Harman refused to accept it. The check was then destroyed and Mr. Cook stood responsible to Mr. Harman for the six hundred dollars due by Philbin and took Philbin's check for that sum. Philbin fully understood that Mr. Harman would not trust him, and he knew that Mr. Cook had made himself responsible for the rent upon the faith of Philbin's check to Cook. An agreement was then signed to dismiss the bill and the cross-bill, and as it was late in the

afternoon Mr. Cook did not have an opportunity to get Phil-
bin's check certified or cashed.    An order was procured from
the Court dissolving the injunction that same evening.    The
next morning when Mr. Cook presented Philbin's check to
the Canton Bank he found that Philbin had stopped payment
of the check, and had withdrawn all the money he had on de-
posit and had left the city. - Mr. Harman then sued out for
Thurn an attachment against Philbin as an absconding debtor
and later on Mr. Cook paid to Mr. Harman the six hundred
dollars for which he had stood responsible, and the attach-
ment and short note case were thereupon entered to Mr.
Cook's use.    The short note case is now before us.

Out of the aforegoing facts the several questions presented
by the eleven bills of exception have arisen.    They all how-
ever involve but two inquiries in addition to a third which the
motion in arrest of judgment brings up.    Without particular-
izing it may suffice to say that the two inquiries which embody
all the objections contained in the eleven exceptions are
these, first was there error in admitting in evidence the deed
and the confirmatory deed to Thurn; secondly, was the trial
Court wrong in permitting the records of the equity case and
the oral testimony of Mr. Cook to be considered by the jury?

The first inquiry turns entirely on the interpretation of *sec. 221
of Art. 16 of the Code of 1904.*    That section reads as follows;
"Every trustee to whom any estate, real, personal or mixed
shall be limited or conveyed for the benefit of creditors, or
to be sold for the benefit of creditors or to be sold for any
other purpose except upon a contingency, shall file with the
Clerk of the Court in which the deed or instruments creating
the trusts may be recorded, a bond in such penalty as the
clerk may prescribe, being as nearly as can be ascertained
double the amount of the whole trust estate, and with sureties
to be approved by the clerk, conditioned for the faithful per-
formance of the trust reposed in such trustee, which bond
shall be retained and recorded in the office of said clerk, and
no title shall pass to any trustee as aforesaid until such bond
shall be filed and approved as aforesaid, and no sale made by any

such trustee without such bond shall be valid or pass any title
to such property or estate.   If the trust estate consists of real
property or of real and personal property, situated partly in
the county or city in which the grantor resides and partly in
one or more other counties, it shall be sufficient that a bond
has been accepted and filed in the county of the grantor's res-
idence; if the trust estate consists entirely of real estate in a
county or counties other than of the residence of the grantor,
it shall be sufficient that a bond has been accepted and filed
in the county in which the deed has been first recorded."

If the above quoted section applies to trustees appointed by
wills and is not wholly confined to trustees appointed by
deeds, then, inasmuch as the trustees named in the will of
Neal O'Donnell did not give bond in Maryland, no title passed
to them and they could convey none to Thurn.   Hence the
question is, Does the section apply to trustees appointed by
wills?   We are of the opinion that it does not, and the reasons
in support of that conclusion are quite obvious.   In the first
place, the word "will" does not occur in the section, and it
cannot be presumed that the Legislature intended the provis-
ions of that enactment to apply to trustees appointed by wills
when not a single reference is made in the section to such trus-
tees in any way whatever.   The omission of the word becomes
more significant when it is remembered that in sec. 219 of the
same Article the General Assembly did employ the word
"will," since it wished to include under that section a trustee
appointed by will, as it is there enacted: "In all cases where a
trustee has been appointed by *will* or *deed* to execute any
trusts," certain proceedings may be had to require a bond to
be given.   The explicit inclusion of a testamentary trustee
under *sec. 219* clearly indicates that he was omitted from *sec.
221*, because he was not intended to be embraced within the
terms thereof.   But it is said the word "instruments" follow-
ing the word "deed" is comprehensive enough to include a
will.   The context, however, furnishes a complete answer to
that contention.   The trustee who must give bond under *sec. 221*,
is required to file it with the "*Clerk of the Court* in which the

deeds or instruments creating the trusts may be recorded."
Now, no wills are recorded by the Clerk of any Court. They
are recorded in the office of the Register of Wills who is an
officer wholly distinct from the Clerk of a Court. The "in-
struments," therefore, to which the section refers are only such
instruments as may be recorded by the *clerk* of a Court, and as
wills are not instruments recorded by the Clerk of a Court
they are not within the purview of the section. In the next
place, the bond which trustees who do come within the scope
of *sec. 221* are required to give, must be retained and recorded
in the office of the *clerk* where the "deed or instrument creat-
ing the trusts may be recorded." The bond must be, as nearly
as can be ascertained, double the amount of the whole trust
estate, and the sureties must be approved by the clerk. No-
where in these provisions is the Register of Wills mentioned
or described. When we turn to *sec. 224* of the same Article
it is apparent that "Clerk of the Court" does not include
Register of Wills, and therefore that the word "instruments"
does not include wills. Under that section only the Circuit
Courts for the counties, the Circuit Court and Circuit
Court No. 2 and the Superior Court of Baltimore City
are empowered to reduce the penalty of the trustee's bond
given under *sec. 221* below an amount double that of
the whole trust estate, and as those Courts have noth-
ing to do with bonds filed in the Orphans' Court or
recorded by the Register of Wills, it necessarily follows
that the bond which *sec. 221* declares must be given be-
fore a title can vest in a trustee, is a bond to secure the faith-
ful discharge of some trust created by a deed or instrument
recorded by the Clerk of a Court and not by a Register of
Wills· In addition to this the statute uses throughout the
term *grantor* and not the term *testator.* The trusts, therefore,
to which it refers are such only as a *grantor* may create, and
are not such as a *testator* may establish by his will. To make
the section embrace a trustee appointed by a will the term
"*Testator*" must be supplied. As *scc. 221* has no application
to trustees appointed by wills, it was not necessary that the trus-

tees named in the will of Neal O'Donnell should give bond,
and their failure to do so did not prevent the title to the Man-
sion House from vesting in them under the will of O'Donnell.
If the deed which they executed was sufficient in form to con-
vey to Thurn the title which vested in them, then Thurn was
entitled to the rent reserved by the lease.  And this brings
us to a consideration of the sufficiency of the deed under which
Thurn claims.

The deed of July, 1903, was made by William F. Clare,
Andrew J. Toland and Patrick M. Carolan "as executors of
the last will and testament of Neal O'Donnell," and was
signed and sealed by the grantors, under each of whose
names there appear the words "Exr., &c., of Neal
O'Donnell, dec'd."  The grantors were trustees as well as
executors.  In their capacity of executors they had no
power of sale, in their capacity of trustees they had an un-
qualified power to sell the decedent's real estate.  In exer-
cising a power which they undoubtedly possessed as trustees
they inadvertently described themselves as executors; and the
question is, Does this erroneous designation of the capacity to
which the power belonged defeat the act done, when the act
done was clearly within the scope of their authority as
trustees?  Former decisions of this Court answer that inquiry
in the negative.  In *Flickinger* v. *Hull*, 5 Gill, 60, the general
principle applicable to such a situation is thus stated: "Where
a person in one character is debtor and the same person in
another character is creditor, the law regards the debt as paid
by the debtor capacity to the creditor.  This is on the same
principle which governs in the case where a man has several
capacities, and is found in possession of property, the law will
attach the possession to the capacity in which, of right, it
ought to be held; so also, where having various capacities, he
executes an authority delegated to him in one of those capac-
ities, the law will attribute the act to the proper authority, al-
though the person does not not profess to exercise it, in vir-
tue of that particular power."  In the later case of *State, use
of Gable et al.* v. *Cheston & Carey*, 51 Md. 352, the general

principle just quoted was applied to a condition closely re-
sembling, in this feature, the case at bar. It there appeared
that John Gable by his will devised all the residuum of his es-
tate to three trustees and the survivor of them in trust for the
purposes therein stated, and appointed the *same parties* his ex-
ecutors. The executors purchased certain leasehold and fee-
simple property and took the conveyances therefor to them-
selves as *executors* and they subsequently, in the *same* capacity,
sold and conveyed the same property to a purchaser. As
executors they had no authority to make such a purchase or
such a conveyance; as trustees they had the power. In deal-
ing with that state of facts this Court said: "It may not be
necessary to decide the point in this case, but we find no diffi-
culty in rerard to the *title* to the real estate thus taken and trans-
ferred by the executors. The same parties were authorized
to purchase and sell as *trustees*, and the fact that they took
and executed conveyance as *executors* would seem to make a
case covered by what is said in *Flickinger* v. *Hull.*" The deed
of July, 1903, was effective to convey a title to Thurn and
there was no error committed in admitting it in evidence.

We now come to the second inquiry, viz.: was the ruling
which admitted in evidence the equity record and the oral
testimony of Mr. Cook right? As the suit was being prose-
cuted in the name of Thurn for the use of Mr. Cook it was
necessary to show, not only how Mr. Cook acquired an in-
terest in the controversy, but further that the payment made
by him to Thurn of the six hundred dollars due by Philbin
was not designed to be an extinguishment or satisfaction of the
latter's debt. The facts disclosed by the equity record and
the facts deposed to by Mr. Cook were all admissible for the
purposes indicated. The second, third, fourth, sixth, seventh,
eighth, ninth and tenth exceptions present the queston as to
the admissibility of this evidence. No error was committed
by any ruling therein objected to. The fifth exception brings
up nothing material. The first and eleventh exceptions relate
to the prayers. The Court's action on the prayers was emi-
nently proper.

The motion in arrest of judgment remains to be considered. It asked that the judgment in the short note case might be arrested to await the determination of a motion to quash the attachment. The motion in arrest was properly overruled. The proceeding by attachment, except when used as an execution on a judgment, is designed to accomplish the two-fold purpose of compelling the appearance of the defendant to answer the plaintiff's demand, and also of giving the plaintiff a security for the payment of his claim. This security is obtained at the beginning of the action by the seizure of the defendant's property, and when once properly and validly acquired, it is retained to await the result of the action, unless, in the meantime, the defendant appears to the suit and displaces the specific lien acquired under the attachment by substituting in lieu of such lien, the security of a bond with sureties approved by the Court. *Poe's Prac.*, sec. 502. If the defendant appears, as Philbin did, the proper course is to try the short note case first. *Barr* v. *Perry*, 3 Gill, 326; *Lambden* v. *Bowie*, 2 Md. 340; *Randle* v. *Mellen*, 67 Md. 187. A judgment obtained after appearance in the short note case in a judgment *in personam*, and nothing that may be urged as a ground for quashing the attachment can be availed of to arrest the entry of a judgment *in personam*. The validity of that judgment in no way depends on the regularity of the attachment. The appearance of the defendant accomplishes one of the objects of the attachment, and after the plaintiff has secured a verdict in the short note case no motion to quash the attachment can intervene to arrest the entry of a judgment *in personam*.

> *Judgment affirmed with costs above and below.*