KAHL, ET AL., COMMISSIONERS, *v.* CONSOLIDATED
GAS, ELECTRIC LIGHT & POWER CO.
OF BALTIMORE

CASSELL ET AL., *v.* CONSOLIDATED GAS, ELECTRIC
LIGHT & POWER CO. OF BALTIMORE

[No. 202, October Term, 1947.]

250

252

*Decided July 20, 1948.*

*Dissenting Opinion filed July 26, 1948.*

*Rehearing denied October 6, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Johnson Bowie* and *Washington Bowie*, with whom
were *George M. Berry* and *Michael Paul Smith* on the
brief, for the County Commissioners of Baltimore County.

*Edward H. Burke* and *Herbert M. Brune, Jr.,* with
whom were *William Fell Johnson* and *H. Courtenay Jeni-
fer* on the brief, for W. Barry Cassell and others.

*Kenneth C. Proctor* for Tax Payers League.

*Louis M. Riehl* for Relay Improvement Association.

*Alfred P. Ramsey* and *Paul S. Clarkson,* with whom was *Edward M. Sturtevant* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is the latest of several cases resulting from the attempt of the appellee to construct an overhead power transmission line through Baltimore County to the Mount Washington sub-station. The purpose of the line is to provide additional electric power, said to be urgently needed, in the Baltimore area. The earlier cases, reaching this Court were *Johnson v. Consol. Gas, Elec. Lt. & Power Co.,* 187 Md. 454, 50 A. 2d 918, 170 A. L. R. 709 (a condemnation case), an appeal from the dismissal of the original bill filed in the instant case, which on motion, agreed to by all parties, was remanded without affirmance or reversal and without opinion, and an appeal from an order refusing a preliminary injunction in this case which we held premature. *Kahl v. Consol. Gas, Elec. Lt. & Power Co.,* 189 Md. 655, 57 A. 2d 331. The present appeal is from orders dismissing the amended and supplemental bills of complaint, passed after extended hearings and the taking of voluminous testimony.

The proposed power line is to traverse the Metropolitan District of Baltimore County for a distance of about eight miles. It is to carry a load of 110,000 volts, and is to cross the Green Spring Valley in the vicinity of Rockland. It has been opposed from the beginning by a group of property owners who have contended that the overhead structures would destroy or impair the beauty of the countryside and would lower property values in a high class residential community. They suggest and offer competent testimony to show that the line can be placed underground at a cost not excessive in view of the circumstances. This question, however, we do not consider is properly one for the court to consider, at

least in the present state of the record. The proposed construction, it may be added, has been approved, after protests and a subsequent investigation, by the Chief Engineer of the Public Service Commission, who said that the cost of underground construction would be prohibitive.

The original bill in this case was filed by the landowners. After amendment, to permit the raising of new issues in view of the passage of certain amended Zoning Regulations in 1946, the trial was had on these issues, which were also raised by the bill filed by the County Commissioners of Baltimore County on February 10, 1947. The cases were heard together. As presented below, and to us, they raise a number of questions. The more important of these are the validity *vel non* of the Zoning Regulations as applied to the appellee, and the rights of the court to pass upon the issues raised in advance of an application for a permit to the Zoning Commissioner.

The Zoning Regulations, first adopted January 2, 1945 (pursuant to a special enabling act, Acts of 1941, Ch. 247, amended Acts 1943, Ch. 877) and subsequently amended November 15, 1946, exempt electric light and power lines on public highways or lines carrying less than 5000 volts on poles. For other electric light and power lines special permits are required. Standards are made applicable to the grant of such special permits. Within the Metropolitan Zone, created to conform to the boundaries of the Metropolitan District, transmission lines, such as the one contemplated by the appellee, are required to be located underground, but the Zoning Commissioner is given power to make special exceptions "when convinced by affirmative testimony * * * that such lines * * * may be carried overhead * * * without impairing the public health, safety or general welfare". In determining any special exception the Commissioner, or the Board of Zoning Appeals on appeal, shall be guided by certain factors enumerated, including the crossing of much travelled highways or

streets, the proximity of the line to schools, churches, or other places where persons congregate, the probability of extension flying over the area, and its nearness to airports, fire hazards or interference with fire-fighting equipment, and future conditions to be reasonably anticipated in view of the normal course of development. Comparative costs of overhead and underground construction may also be considered, but the excess in cost is not, of itself, to be deemed sufficient cause for the issuance of a permit for overhead construction. The General Assembly confirmed and validated these provisions by the Act of 1947, Ch. 915, after the trials of the present cases began.

While the efforts of the landowners may have had much to do with the adoptions of these amended Zoning Regulations, that, of itself, does not invalidate them or make them inapplicable to the proposed line of the appellee. They are general in their nature, affect the entire Metropolitan District, and are not unreasonable or unduly oppressive. The Metropolitan District of Baltimore County is, except for its different form of government, in all respects a city. In many places it is impossible to determine where the City of Baltimore ends, and where the District begins. One of the great problems of all cities is to keep the streets free of structures, such as poles and the accompanying wires, which interfere with their free use and passage. Baltimore City had that problem, and its solution was one of the benefits of the fire of 1904. It is by no means too early for Baltimore County to start to clear the streets of its constantly growing and developing Metropolitan District. The Zoning Regulations are a natural and accepted method of making such a beginning, and they appear in general to be a valid exercise of the police power.

Public bodies such as legislatures or county commissioners are frequently and rightly responsive to public opinion. The fact (if we so assume) that these Zoning Regulations were passed under the urging of certain persons who were vitally affected by the proposed con-

struction, does not render them void. The first zoning acts were the result of increasing public pressure to prevent encroachment, in residential areas, of structures which damaged and injured the properties of those living there. A restrictive act may not be passed or a permit refused merely because the community wants it. But even if the community wants it, that does not invalidate the action of the authorities, if such action is beneficial to the community at large, and prevents the erection of structures inimical to the public health, welfare or safety. In the recent case of *Benner v. Tribbitt*, 190 Md. 6, 57 A. 2d 346, we said that a permit to build a filling station could not be refused "by a plebiscite of neighbors". But in that case the granting authorities themselves said the construction of the filling station was not against the public health, welfare or safety, and it was plain that the denial of the permit was because, and *solely* because, the neighboring residents did not want it granted. That was an improper exercise of the police power. In the more recent case of *Northwest Merchants' Terminal v. O'Rourke*, 191 Md. 171, 60 A. 2d 743, we held that an amendment to the zoning ordinance of Baltimore which prevented the obviously appropriate use, for commercial purposes, of property adjacent to a railroad track was void because it bore no relation to the facts, was passed because the neighboring residents asked for it, and prevented the owner from the proper use of its property. Here again was the police power improperly invoked. But in the case of *Anne Arundel County v. Snyder*, 186 Md. 342, 46 A. 2d 689, we upheld a zoning ordinance of Anne Arundel County, although it was obviously passed because adjacent property owners wanted to prevent a commercial boat plant with a marine railway and slips from being constructed in a section of the county, heretofore residential. We upheld that ordinance because it was passed for the benefit of the community as a whole, it was not apparent from the record that the action of the County Commissioners was arbitrary and they were acting within their authority, notwithstanding the im-

petus for that action came from interested parties. We look to the record to find whether the action taken is in the interest of the community as a whole. It is generally presumed that it is. The fact that the action is urged by a minority, by a majority, or by all of the community, neither brings the action within the police power, nor does it prevent it from being valid and constitutional.

The appellee contends that the area through which it proposes to construct its transmission line is rural and is not subject to the kind of regulation necessary in thickly settled communities. There is undoubtedly a difference, but it must be borne in mind that the Metropolitan District is a belt around the City of Baltimore, and the fact that this part of the belt is not yet as thickly settled as is the remainder does not prevent the Commissioners from anticipating what may soon happen. Zoning looks to the future, and attempts to preserve, rather than to uproot. In the case of *Gordon v. Montgomery County*, 164 Md. 210, 164 A. 676, the appellant owned 71 acres of land in Montgomery County, near the City of Washington, upon which he wished to start a cemetery. Under a local statute, the County Commissioners were required to issue permits for cemeteries. Gordon claimed the statute and the regulations of the Commissioners were void, because the territory in which his land was located was zoned as residential, and no burying ground was permitted there. He attempted to enjoin the Commissioners from interfering with him. This Court held that the statute was valid, the regulations of the Commissioners were reasonable, and within the police power, and that Gordon must obtain a permit before he could start his cemetery.

The last mentioned case has much similarity to the one presented here. If the Zoning Regulations are valid, then the properly constituted authorities of Baltimore County are the ones to determine whether or not a special permit should be granted. We cannot assume that they will act arbitrarily, and will refuse a permit for no reason at all or because the neighbors object. It is hardly likely

that a needed public improvement will be held up by the authorities because of the opposition of a small group of citizens in one section of the county. It is not to be presumed that the standards set up in the regulations will be disregarded. *Tighe v. Osborne,* 150 Md. 452, at page 459, 133 A. 465, 46 A. L. R. 80; *Gordon v. Montgomery County, supra,* 164 Md. at page 214, 164 A. 676.

We have many times said that, where an administrative agency is given power to determine questions, such questions must, in the first instance, be submitted to it, and if a statutory method of appeal is provided, that must be, in general, followed. The courts do not favor the by-passing of administrative bodies, unless there is a clear necessity for a prior judicial decision. Where a constitutional question is involved, equity may, of course, intervene and act. The appellee here attempts to raise such a question. If its contention were upheld, action by the court would be entirely proper and would not violate our conception of administrative procedure. But we are unable to find that the Zoning Regulations are unreasonable or without any real and substantial relation to the public health, safety or welfare. Since we find that they are a valid exercise of the police power, the appellee must proceed under them, and cannot invoke the aid of the courts, unless some improper, illegal or arbitrary action is taken by the zoning authorities.

The case of *Baltimore & O. R. Co. v. Waters,* 105 Md. 396, 66 A. 685, 12 L. R. A., N. S., 326, presents a different picture. There the Legislature had passed an act, at the instance of various landowners, to prevent the construction of a steam railway in certain sections of Baltimore County. The Court held the act void because it was not passed in the interest of the public, but for the benefit of a particular class of people who lived near the proposed line of the railroad. When that case was decided the idea of zoning had been barely thought of, and the only question before the Court was whether the special act was a valid exercise of the police power. Here we have the exercise of that power in a way now well

recognized, for the benefit of the entire community in the Metropolitan District, and not solely for the benefit of a particular class of land owners. The cases are readily distinguishable on this ground.

The appellee also contends, and the chancellor found, that it does not have to apply for a special permit because it has acquired a vested right (as distinguished from an existing use) in the construction of its overhead line. If this claim is substantiated, the taking of such a right is claimed to be in violation of due process.

The police power is not unlimited, and cannot be used to oppress. But it is one of the attributes of sovereignty, and will be upheld unless there is a clear violation of paramount rights. For example, this Court has sustained the right of the State, acting under such power, to nullify a contract for the labor of prisoners in the Penitentiary, when public policy made it necessary to employ them for other purposes, in spite of the interdiction in the Constitution of the United States against the impairment of the obligation of contracts. *Jones Hollow Ware Co. v. Crane et al.,* 134 Md. 103, 106 A. 274, 3 A. L. R. 1658. In the instant case, the County Commissioners have not prohibited the construction of appellee's proposed overhead transmission line. They have only stipulated that any such line must be approved by the constituted authorities before it is built. Assuming, without deciding, the franchise of appellee confers upon it a vested right to construct a transmission line where such construction is contemplated, the question is whether the appellee, under the circumstances of the case before us, has extended that right to the construction of an *overhead* line without the necessity of a permit.

The basis of the contention that it has such an unfettered right is in the fact that it waited until the first zoning regulations were passed in 1945, before proceeding to acquire land and purchase materials. The 1945 regulations did not include any power over such lines as that proposed by appellee, and it, therefore, felt free to proceed. It acquired several rights of way for use of an

overhead line, conducted condemnation proceedings for the purpose of acquiring others, and bought materials to be used in construction. The total expenditures made are said to total $137,000. The Commissioner's reply to these statements is, in effect, that the zoning regulations were subject to change, that the appellee knew that changes were being urged when it made its expenditures, that the 1945 regulations did not foreclose the matter, and that all of the operations of the appellee were at all times subject to the proper exercise of the police power, and were taken at appellee's risk.

Where such questions as these are raised, the facts in each case are controlling. In some cases, it has been held that vested rights have been acquired, which the exercise of the police power must not disturb by subsequent regulations. The difficulty arises when the power is invoked after the aggrieved party has been led to believe that the way is clear for it to proceed. Thus, the facts in each case must be examined to find the correct answer.

In the leading case of *Western Theological Seminary v. Evanston,* 325 Ill. 511, 156 N. E. 778, 783, a college was held entitled to continue its construction, although after its acquisition of its property and the commencement of operations, the community was re-zoned in such a way as to make that construction a violation of the amended zoning laws. The Court in that case said, "Neither the city council nor the Legislature is authorized, under the power of the Constitution, to take away or limit the appellant's right to make any use of the property which was lawful at the time it acquired it, *except in such ways as may be necessary for the public health, comfort, safety, or welfare"*. (Italics supplied.)

In *Dobbins v. Los Angeles,* 195 U. S. 223, 25 S. Ct. 18, 49 L. Ed. 169, the Supreme Court said that the right to exercise the police power is a continuous one, although, in that case, it did not find the conditions justified re-zoning to prevent the construction of a gas plant, which

was in the proper zoning area at the time it was commenced.

These cases resulted from conditions where the construction was absolutely stopped or prohibited after it had been started under zoning laws which permitted it. The courts held that under the circumstances in each case, the property of the constructing parties was being taken without due process of law. In the instant case, no property has been taken, no franchise right has been denied. The County has said only that it asserts its right to pass upon the proposed construction in the exercise of the police power. This Court has held that a telephone company with a franchise to use the state roads is not entitled to locate its conduits and manholes in such roads without first getting permits from the State Roads Commission. *Chesapeake & Potomac Tel. Co. v. State Roads Commission,* 132 Md. 194, at page 202, 103 A. 447. The possession of a franchise does not prevent the public authorities from passing upon the manner of its use, where public rights make such action necessary. We cannot deny the county such rights in this case upon the facts presented, and we cannot assume what the result of their exercise may be. The appellee may be granted a permit, but on the other hand, if it is found, upon an examination of the facts that the construction it proposes is in violation of the public welfare or safety, a proper use of the police power would forbid it. And we are unable to find that the appellee was not aware that some regulation of its activities was imminent, or at least was not improbable. It elected to proceed, but the caution displayed by it, shows that it anticipated or feared some further zoning which might affect it. We do not think it can invoke the protection of the due process clause, under the record in this case.

Another contention made by appellee is that the Code Art. 23, paragraph 344 et seq., places the entire control over its activities in the Public Service Commission, and as a result the authority given the County Commissioners to zone its lines and structures is contained in a special

law prohibited by Article III, Sec. 33 of the Maryland Constitution. It is sufficient to say, in answer to this contention, that the Public Service Commission Law has nothing to do with zoning.

It is suggested that after a long trial, and the appeals here, it is a denial, or at least a delay, of justice to compel the appellee to start all over again by applying to the Zoning Commissioner for a permit. It may be observed that the appellee could have done this in the first instance, and these proceedings could have been obviated. However, proper procedure in initial stages is important where administrative bodies have authority. For example in the case of *Baltimore & Ohio R. Co. v. United States ex rel. Pitcairn Coal Co.*, 215 U. S. 481, 30 S. Ct. 164, 168, 54 L. Ed. 292, there had been in the District Court "voluminous testimony and a protracted trial". The Circuit Court of Appeals had affirmed the lower court. The Supreme Court did not hesitate to dismiss all these proceedings because it said, "* * * the grievances complained of were primarily within the administrative competency of the Interstate Commerce Commission, and not subject to be judicially enforced; at least until that body, clothed by the statute with authority on the subject, had been afforded, by a complaint made to it, the opportunity to exert its administrative functions". We think the action of the Supreme Court in that case is ample precedent for similar action in this case.

The orders of the Chancellor will be reversed, and the cases remanded for the passage of a decree enjoining the appellee from proceeding with the construction of its line, until it has obtained the necessary permits from the county zoning authorities. Since the two cases were tried together, we make no distinction between them, and no point of the right of the individual complainants to such a decree.

> *Orders reversed with costs and cases remanded for the passage of a decree in accordance with this opinion.*

HENDERSON, J., filed the following dissenting opinion:

I am unable to concur in the conclusion of a majority of the court, that the case should be remanded for further proceedings before the Zoning Commissioner. The appellants initiated these proceedings in March, 1946, to enjoin the construction of the overhead power line as proposed, and by amended and supplemental bills raised the issue of noncompliance with regulations adopted while the original suit was pending. Voluminous testimony was offered on both sides, and it is unlikely that any new light could be thrown on the problem in a new hearing. To hold that the defense on constitutional grounds, raised by the answers, is not available at this stage of the case serves no useful purpose, and will unduly delay a final decision on the merits and the construction of a vital public facility. I think the authorities support the assumption of jurisdiction by the chancellor under the circumstances.

The doctrine that where a statutory remedy is provided, by way of appeal from the action of an administrative body, such remedy is exclusive, is essentially a doctrine of convenience. With due regard to the legislative prerogative of denying or limiting appeals to the courts, or to this court, we have held that the jurisdiction of equity to review arbitrary or illegal action is inherent. *Hecht v. Crook,* 184 Md. 271, 40 A. 2d 673; *Heaps v. Cobb,* 185 Md. 372, 45 A. 2d 73; *Gianforte v. Board of License Commissioners,* 190 Md. 492, 58 A. 2d 902. This is particularly true where property rights are involved, and there is a general attack upon the constitutionality of an Act (*Jones v. Gordy,* 169 Md. 173, 180 A. 272), or its constitutional validity as applied to a particular person or class. *Buck Glass Co. v. Gordy,* 170 Md. 685, 185 A. 886. See also *Prince George's County v. Northwest Cemetery Co.,* 160 Md. 653, 154 A. 452; *Maryland Theatrical Corp. v. Brennan,* 180 Md. 377, 24 A. 2d 911, and *Anne Arundel County v. English,* 182 Md. 514, 35 A. 2d 135, 150 A. L. R. 842. If, however, the solution of the question depends, in whole or in part, upon findings within

the expert knowledge of the administrative tribunal, relief in equity will be denied. Compare *Oursler v. Tawes,* 178 Md. 471, 13 A. 2d 763 and *Tawes v. Williams,* 179 Md. 224, 17 A. 2d 137, 132 A. L. R. 1105. Likewise, where a statutory remedy is invoked but not pursued as contemplated by statute, equity will not intervene. *Stark v. State Board of Registration,* 179 Md. 276, 19 A. 2d 716; *Anne Arundel County v. Snyder,* 186 Md. 342, 46 A. 2d 689. In the instant case the contentions raised by the appellee challenge the constitutional validity of all the amendments to the existing regulations, adopted November 15, 1946, and assert a total lack of power in the Zoning Commissioner to refuse a special permit under the facts shown in the record. The amended regulations are directed solely at the appellee, and at no other utility. There is no suggestion that any other power line is in prospect. The regulations are carefully tailored to fit the particular case. No permit is required for the erection of power lines along public highways, or anywhere except on private rights of way in residential districts. Nor is a permit required for overhead lines of less than 5,000 volts. The whole record supports the chancellor's finding that "the real issue is the question of the protection of the scenic beauty of a small section of the Green Spring Valley".

It is quite true that zoning looks to the future, and has as one of its principal objects the preservation of property values in residential districts by prohibiting or restricting the establishment of new commercial or industrial enterprises in particular areas. The unsightliness of particular structures may also be considered as one of the factors affecting property values. But there is a vast difference between restrictions upon private undertakings and those which are clothed with a public interest and must have access to the centers of population if they are to perform their public function. In weighing the reasonableness of the particular restriction here in question, the harm to property owners in the immediate vicinity of the line must be balanced against

the benefits to all the users of electric power in the whole urban area.

In *Baltimore & Ohio R. Co v. Waters,* 105 Md. 396, 66 A. 685, 694, 12 L. R. A., N. S., 326, the legislature had passed an Act denying to the railroad company the right to build a connecting line through certain rural sections. In declaring the Act invalid, this court said: "The evidence in this case not only wholly fails to show that the interests of the public generally require the enactment of this law, but it satisfies us that it has been enacted in the interest of a particular class, viz., the property owners nearest the line of the road, whose property will undoubtedly be rendered less desirable by the construction and operation of the road * * *." In *Public Service Commission v. Philadelphia, B. & W. R. Co.,* 155 Md. 104, 141 A. 509, it was held that the Public Service Commission exceeded its powers in annexing to its permit for the relocation of a railroad line a proviso that a particular grade be used, to avoid an embankment which would obstruct the view of property owners. See also *Public Service Commission v. Williams,* 166 Md. 277, 170 A. 517. It is suggested that these were not zoning cases, and that the zoning power is broader than that exercised by the Public Service Commission. However, the zoning power is only a special application of the police power, and its exercise can only be justified if, in fact, it promotes the public health, safety, convenience or general welfare, and not simply the interests of a particular class or group of property owners. *Brenner v. Tribbit,* 190 Md. 6, 57 A. 2d 346; *Northwest Merchants Terminal v. O'Rourke,* 191 Md. 171, 60 A. 2d 743. Compare *Perellis v. Baltimore,* 190 Md. 86, 95 57 A. 2d 341, 346. Conceding the broad scope of the zoning power, as laid down in the leading case of *Euclid v. Ambler Realty Co.,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016, the exercise of that power will always be scrutinized by the courts to determine its reasonableness in a particular case. *Nectow v. Cambridge,* 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; *R. B. Construction Co. v. Jack-*

*son,* 152 Md. 671, 137 A. 278. Compare *Anne Arundel County v. Ward,* 186 Md. 330, 46 A. 2d 684, 165 A. L. R. 816. If the question is not "fairly debatable", the zoning cannot stand.

It is perfectly clear from the record that the erection of the power line on the route proposed will not affect the public safety. The appellants were unable to cite a single case, in Maryland or elsewhere, where a member of the public received a personal injury from a similar line. The chancellor found that the whole line of 7.17 miles would cross only 23 properties, which have an average area of 127 acres. Twelve are farms, five are vacant and unimproved, two are commercial. 58% of the line is through woodland, 28% through uncultivated fields, 14% through tilled fields. The average distance of the line from the houses on the properties crossed is 950 feet. The average distance of the houses of the Cassell complainants is 1826 feet.

In his report to the Public Service Commission on August 7, 1945, the Chief Engineer of that body recommended approval of the project. He said: "The proposed route is by far the best selection in the Northwest quadrant of the City and adjacent territory. In fact, there is no other feasible route north of Holsfield." He also stated that the cost of underground construction would be "prohibitive". In the previous appeal of the condemnation suit (*Johnson v. Consolidated Gas Electric Light & Power Co.,* 187 Md. 454, 464-467, 50 A. 2d 918, 923, 170 A. L. R. 709) we said that the company had not abused the discretion granted by its franchise "in determining the reasonable necessity of constructing the electric line * * * as an overhead line rather than underground", and pointed out that enhanced costs would "be reflected in higher electric rates to the public as consumers". The present record indicates, and the chancellor found as a fact, that the cost of placing underground the 3.27 miles of line across the Rockland area would be in excess of $700,000, as compared with an estimated cost of some $200,000 for the overhead line.

The chancellor found that the additional annual charge to the consuming public would be "between $102,000 and $190,000." Cost is a necessary consideration in determining the reasonableness of an exercise of the police power (*Lehigh Valley R. Co. v. Board of Public Utility Com'rs*, 278 U. S. 24, 49 S. Ct. 69, 73, L. Ed. 161, 62 A. L. R. 805) despite the provision in the regulations (4 F) that enhanced cost of underground construction "shall not in itself be deemed sufficient cause for the issuance of a permit for overhead construction." Moreover, practical and engineering difficulties were suggested, which might materially affect the quality of service. It was shown that underground transmission of electricity at the voltage required is a comparatively recent technical development, which has not been tried anywhere except in the vicinity of Detroit. The new line serving New York, crossing the exclusive Westchester district, was erected overhead with the approval of the Public Service Commission, despite strenuous protest by property owners. The New York courts have also held that muncipalities could not block the construction of overhead lines or gas holders, in the exercise of a franchise power, by an attempted exercise of the zoning power. *Long Island Lighting Co. v. Old Brookfield*, 273 App. Div. 856, 77 N. Y. S. 2d 143; *Long Island Lighting Co. v. Griffin*, 272 App. Div. 551, 74 N. Y. S. 2d 348.

If the Zoning Commissioner, after remand in the instant case, should refuse a permit, or attach conditions that would compel underground construction, the result would be to deprive the utility of its right to use property acquired or condemned prior to the adoption of the present regulations, and would limit the exercise of its franchise power to select the best and cheapest method of serving its customers. The additional cost to the general public would be of no benefit to the community at large, but only benefit a small group of property owners in the vicinity of the line, to the extent that the value of their property would not be impaired by the presence of unsightly structures. I think the record shows no sub-

stantial basis for the exercise of such a power, and that the chancellor's action in striking down the amended regulations should be affirmed. The confirmatory Act of 1947 cannot have the effect of validating regulations which transcend the limits of the police power.

I am authorized to say that Judge DELAPLAINE concurs in this dissent.