MILLER BROTHERS COMPANY *v.* STATE
(Two Appeals in One Record)

[No. 93, October Term, 1952.]

536

538

*Decided March 11, 1953.*

The cause was argued before DELAPLAINE, COLLINS and HENDERSON, JJ.

*William L. Marbury,* with whom were *James Piper, Piper & Marbury, William Poole, James L. Latchum* and *Berl, Potter & Anderson,* on the brief, for the appellant.

*Francis D. Murnaghan, Jr., Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Edward F. Engelbert, Assistant Director, Retail Sales Tax Division, Office of the Comptroller of the Treasury,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

These two appeals test the constitutionality of the Maryland Use Tax Act, Code 1951, art. 81, secs. 368-396, as applied to furniture sold by appellant, Miller Brothers Company, a Delaware corporation, at its store in Delaware and delivered to purchasers residing in Maryland.

The tax is an excise imposed by the Legislature on "the use, storage or consumption in this State of tangible personal property purchased from a vendor within or without this State * * * for use, storage or consumption within this State." The Act expressly provides in Sec. 369 that the tax shall be paid by the purchaser and shall be computed as follows: (a) in each sale where the price is from 51 cents to $1, both inclusive, 2 cents; (b) on each 50 cents of price or fraction thereof in excess of $1, 1 cent. The tax is paid by the purchaser to the vendor, as trustee for the State, and the vendor is liable for the collection for the State.

The State entered suit against appellant on March 19, 1952, to recover $356.40 assessed by the State Comptroller as deficiency in use tax in the period from July 1, 1947, to December 31, 1951. The State also filed a nonresident attachment suit against appellant and attached a station wagon owned by it. Appellant, appearing specially, filed a petition to quash the writ of attachment on the ground that the assessment was unconstitutional.

The State answered that appellant had neither applied for a revision of the assessment nor paid the tax and applied for a refund, and prayed that the petition to quash be dismissed because (1) the collection of use taxes may be contested only by the proceeding set forth in the statute, and (2) the assessment was authorized by statute and was constitutional.

In the short note case the Court entered judgment in favor of the State for $363, and in the attachment case it passed an order denying the petition to quash. We have been asked to review both the judgment and the order.

At the outset the State made the objection that if appellant desired to contest the assessment, it should have applied to the State Comptroller for a revision of the assessment; and that, having failed to do so, it was precluded from contesting it in the attachment case. It is entirely true that the courts do not favor the by-passing of administrative agencies, except where there is a clear necessity for a prior judicial decision. We have accordingly held that where a special form of remedy is provided by statute, the litigant should resort to that form rather than pursue other remedies, although where a constitutional issue is raised, and there is no danger of by-passing administrative action, the question may properly be decided in a suit for injunction or declaratory decree before the time has arrived for invoking the statutory remedy. *Kahl v. Consolidated Gas, Electric Light & Power Co.*, 191 Md. 249, 258, 60 A. 2d 754; *Commissioners of Cambridge v. Eastern Shore Public Service Co.*, 192 Md. 333, 64 A. 2d 151; *Francis v. MacGill*, 196 Md. 77, 75 A. 2d 91; *Kracke v. Weinberg*, 197 Md. 339, 79 A. 2d 387; *Schneider v. Pullen*, 198 Md. 64, 81 A. 2d 226; *Reiling v. State Comptroller*, 201 Md. 384, 94 A. 2d 261.

The Retail Sales Tax Act and the Use Tax Act provide that any taxpayer may apply to the Comptroller for revision of the tax assessed against him, and the Comptroller shall act promptly upon the application and notify the

taxpayer of his action. Any taxpayer dissatisfied with the final determination of the Comptroller may appeal therefrom to the Circuit Court for the County in which the taxpayer regularly conducts his business or to the Baltimore City Court if the taxpayer conducts his business in Baltimore City. The taxpayer, or the Attorney General on behalf of the State, or the Comptroller may, within 30 days from the final order entered by the Court, appeal to the Court of Appeals of Maryland. Code 1951, art. 81, secs. 347, 348, 394.

Appellant is a foreign corporation. It has never qualified or registered to do business in Maryland and has no resident agent in this State. It is engaged in the retail household furniture business. It has only one store, which is located in Wilmington. It does not maintain any office, branch store, warehouse or other place of business in Maryland. It has no salesman or other employee in Maryland. It does not maintain a mail-order business or accept orders by telephone, as most of the merchandise sold by it requires personal inspection and selection. It has, however, mailed from time to time advertising matter to its customers, including those who reside in Maryland. If merchandise purchased by a resident of Maryland is not taken away by the purchaser, the seller delivers it by its own motor vehicle or by common carrier. As appellant has not been regularly conducting its business in any County of the State or in Baltimore City, within the meaning of Section 348, it could not have followed the statutory procedure. Therefore, appellant was not precluded from challenging the validity of the assessment in the attachment case.

Appellant urged that it was not the intention of the Legislature to put the burden of collecting use taxes upon a foreign corporation which does not engage in any activity in Maryland except delivery of merchandise. It is true that even the solicitation of business in Maryland by an agent of a foreign corporation, without other substantial activities within the State, does not constitute "doing business" in the State within the meaning

of the Foreign Corporation Law so as to subject itself to the State forum. Code 1951, art. 23, sec. 88; *M. J. Grove Lime Co. v. Wolfenden*, 171 Md. 299, 303, 188 A. 794; *Shaughnessy v. Linguistic Society of America*, 198 Md. 446, 453, 84 A. 2d 68, 71. But here we are dealing with a statute which is far broader in its application.

Section 371 of the Act provides: "Every vendor engaging in business in this State and making sales of tangible personal property for use, storage or consumption in this State which are taxable under the provisions of this sub-title, at the time of making such sales, or if the use, storage or consumption is not then taxable hereunder, at the time when such use, storage or consumption becomes taxable hereunder, shall collect the tax imposed by this sub-title from the purchaser."

Section 368 (k) defines the term "engaged in business in this State" as the selling or delivering in this State, or any activity in this State in connection with the selling or delivering in this State, of tangible personal property for use, storage or consumption within this State.

In view of this unusually broad definition of "engaged in business," we must hold that the statute is applicable to appellant, because it delivered merchandise to purchasers in Maryland.

We now consider the basic question whether the Maryland use tax infringes Article I, Section 8, of the Constitution of the United States, which vests in Congress the power to regulate commerce with foreign nations and among the several States. This provision of the Constitution was designed by the framers to eliminate the barriers which had been erected by the States to the freedom of movement across State borders. While the Constitution grants to Congress the power to regulate Commerce among the States, it does not say what the States can do or cannot do in the absence of Congressional action. It may be generally stated, however, that while the Commerce Clause forbids a State to impose taxes directly on interstate commerce, it does not ab-

solutely prevent the imposition of State taxes which, under certain circumstances, may have some incidental effect upon such commerce. The State cannot use its taxing or police power with the aim and effect of establishing an economic barrier against competition with the products of another State. The importer must be free from taxes which are imposed for the purpose of suppressing competition from outside the State and which lead to the suppression intended. It has been said that no formula can be devised for determining in all cases whether or not a State tax is prohibited by the Commerce Clause, and that the question is inherently a practical one depending for its decision on the facts of each particular case. *J. D. Adams Mfg. Co. v. Storen,* 304 U. S. 307, 58 S. Ct. 913, 924, 82 L. Ed. 1365, 117 A. L. R. 429.

Taxes on sales of personal property have been upheld by the United States Supreme Court in decisions extending back to 1869, when the Court, speaking through Justice Miller in *Woodruff v. Parham,* 8 Wall. (U. S.) 123, 19 L. Ed. 382, held that an ordinance of the City of Mobile, Alabama, authorizing the collection of a tax on sales at auction was valid as applied to goods which were products of other States. Since that time the Court has uniformly sustained a tax imposed by the State of the buyer upon a sale of goods effected by delivery to the purchaser upon arrival at destination after an interstate journey. In referring to that ruling, Justice Stone said in *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U. S. 33, 60 S. Ct. 388, 394, 395, 84 L. Ed. 565: "It has the support of reason and of a due regard for the just balance between national and state power. In sustaining these taxes on sales emphasis was placed on the circumstances that they were not so laid, measured or conditioned as to afford a means of obstruction to the commerce or of discrimination against it, and that the extension of the immunity of the commerce clause contended for would be at the expense of state taxing power by withholding from taxation prop-

erty and transactions within the state without the gain of any needed protection to interstate commerce."

In *Henneford v. Silas Mason Co.*, 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814, the Court held that in its application to machinery, materials and supplies purchased at retail in other States by contractors and brought into the State of Washington for use in construction, a State tax of 2 per cent of the purchase price, including the cost of transportation, for the privilege of using any article of tangible personal property within the State was not a tax on the operations of interstate commerce, but a tax on the privilege of use after such commerce was at an end, and therefore did not unlawfully burden interstate commerce. The Court explained that the right to use property is only one of the privileges making up ownership, and the fact that the tax laid upon the use of personal property purchased at retail, either within or without the State, was called an excise did not make the State's power to impose it less under the Commerce Clause than if it had been called a property tax.

In *Pacific Telephone & Telegraph Co. v. Gallagher*, 306 U. S. 182, 59 S. Ct. 396, 83 L. Ed. 595, the Court held that a California use tax, imposing an excise on the consumer for the use, storage or consumption in California of tangible personal property purchased from any retailer, did not infringe the Commerce Clause in its application to equipment, materials and supplies purchased outside California by a California corporation operating a telephone and telegraph system in interstate and intrastate commerce and shipped to it in interstate commerce at various points within the State.

In *Nelson v. Sears, Roebuck & Co.*, 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888, the Court held that where a New York corporation was doing business in Iowa through its retail stores, the fact that a sale by one of its mail-order houses located outside Iowa to a customer within the State was made outside the State did not preclude application of the use tax thereto on the ground

that the purchaser employed agencies of interstate commerce to effectuate the purchase.

In *Nelson v. Montgomery Ward & Co.*, 312 U. S. 373, 61 S. Ct. 593, 85 L. Ed. 897, the Court held that the Iowa Use Tax Act was not unconstitutional as applied to mail-order sales solicited by an Illinois corporation through advertising by its stores in Iowa, although the orders were sent to out-of-State mail-order houses and were filled by shipments to customers in Iowa, since the corporation could not thus escape the tax exacted by Iowa as a price of enjoying benefits flowing from its Iowa business.

In line with these decisions, we hold that the Maryland Use Tax Act, as applied to appellant's sales of furniture delivered to purchasers residing in Maryland, does not unlawfully interfere with interstate commerce. Of course, we recognize that the Commerce Clause prevents the State not only from enacting legislation that constitutes a direct burden on interstate commerce, but also from imposing any heavier burden on products brought into the State from other States than it imposes upon similar products of their own territory. It is well established that a State tax on merchandise brought into the State from another State or upon its sales after it has reached its destination is lawful only when the tax is not discriminatory in its incidence against the merchandise because of its origin in another State. *Sonneborn Bros. v. Cureton*, 262 U. S. 506, 43 S. Ct. 643, 646, 67 L. Ed. 1095; *Baldwin v. G. A. F. Seelig, Inc.*, 294 U. S. 511, 55 S. Ct. 497, 502, 79 L. Ed. 1032, 101 A. L. R. 55. However, a use tax statute, as applied to property purchased outside the State and brought into the State by the seller and used therein by the purchaser in conducting its business, is not discriminatory and hence does not offend the Commerce Clause where the tax is not exacted upon any article the sale or use of which has been subjected to a tax equal to or in excess of the challenged tax, whether under the laws of the State imposing the challenged tax or those of any other State.

Appellant has failed to show that the Maryland use tax is discriminatory. This tax is complementary to the retail sales tax. Code 1951, art. 81, secs. 320-367. Section 370 of the Use Tax Act specifically exempts from the use tax all personal property upon which a retail sales tax has been paid to the State of Maryland. It is one of the functions of the integrated sales and use taxes to remove the temptation of buyers to place their orders in other States in the effort to escape payment of the tax on local sales. The fact that the buyer employs agencies of interstate commerce to effectuate his purchase is not material, since the tax is imposed on the privilege of use, storage or consumption of property after the commerce is ended. Our statute taxes the use, storage or consumption of the property in the State of Maryland regardless of the time when the tax is required to be paid.

The final contention is that the assessment violates the Due Process Clause of the Fourteenth Amendment of the Federal Constitution and also Article 23 of the Maryland Declaration of Rights, which declares that no man ought to be "deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the Land." Appellant, appearing specially in the attachment case for the purpose of quashing the writ of attachment, sought to defend its interest in the attached motor vehicle without subjecting itself to the jurisdiction of the Superior Court.

Attachment proceedings, except those used as execution on judgment, are designed to accomplish two purposes: (1) to compel the appearance of the defendant to answer the plaintiff's demand, and (2) to give the plaintiff a security for the payment of his claim. This security is obtained at the commencement of the action by the seizure of the defendant's property. When the property is validly acquired, it is retained to await the result of the action, unless the defendant appears to the suit in the meantime and displaces the lien acquired under the attachment by substituting the security of a bond. If

the defendant in a nonresident attachment suit appears, the proper course is to try the short note case against him before trying the attachment case. After the defendant has appeared and a verdict has been rendered in favor of the plaintiff in the short note case, the entry of a judgment *in personam* will not be arrested on account of the existence of any ground for quashing the attachment. *Philbin v. Thurn,* 103 Md. 342, 63 A. 571.

Nevertheless, it is permissible for a defendant whose property has been attached to appear in the action solely for the purpose of protecting his property and without subjecting himself personally to the jurisdiction of the court, even though in order to protect his property he contests the validity of the plaintiff's claim. In such a case the court has jurisdiction over the property attached, but does not have jurisdiction over the person of the defendant. In support of this rule, the American Law Institute states: "If the court thereby acquires jurisdiction over him personally, in spite of his protestation that he does not intend to submit himself personally to the jurisdiction of the court, he has been placed in a difficult dilemma. He has been compelled either to lose his property, even though the claim against him is unfounded, or to submit himself personally to the jurisdiction of the court which otherwise could have no power over him." *Restatement, Judgments,* sec. 40.

But even acknowledging that appellant, a foreign corporation, was not subject to the State's jurisdiction, we hold that appellant may be held liable for the collection of the use tax from its Maryland customers. Appellant relied on two Mississippi decisions, *Reichman-Crosby Co. v. Stone,* 204 Miss. 122, 37 So. 2d 22, and *Stone v. Reichman-Crosby Co.,* 43 So. 2d 184, holding that a nonresident seller engaged in interstate commerce is not subject to the State's jurisdiction and taxing power so as to be personally liable for failure to collect and pay a tax levied against citizens of Mississippi. We follow the decisions of the United States Supreme Court, rather than the Mississippi decisions.

In *Felt & Tarrant Mfg. Co. v. Gallagher,* 306 U. S. 62, 59 S. Ct. 376, 83 L. Ed. 488, the Court held that the California Use Tax Act requiring retailers to collect the use tax from purchasers did not violate the Due Process Clause of the Fourteenth Amendment as applied to appellant, an Illinois corporation, which did not carry on any intrastate operations in California and was not subject to its jurisdiction, as against the argument that California lacked the power to require it to act as the State's collecting agent for the use tax and to insure payment of the tax if it failed to make collections from the tax debtors. Again in *Southern Pacific Co. v. Gallagher,* 306 U. S. 167, 59 S. Ct. 389, 83 L. Ed. 586, the Court held that the California use tax, as applied to tangible personal property purchased outside the State by the railroad company and installed on importation or kept available for use as part of the transportation facilities, was not invalid as violating the Due Process Clause, since the taxable event was the exercise of property rights in California.

In *General Trading Co. v. State Tax Commission of Iowa,* 322 U. S. 335, 64 S. Ct. 1028, 1029, 1030, 88 L. Ed. 1309, where a Minnesota seller had no office, branch, warehouse, or general agent in Iowa, but shipped goods from Minnesota to purchasers in Iowa, Justice Jackson, dissenting, said: "So we are holding that a state has power to make a tax collector of one whom it has no power to tax. Certainly no state has a constitutional warrant for making a tax collector of one as the price of the privilege of doing interstate commerce. * * * The power of Iowa to enforce collection in other states is certainly very limited and the effort to do so on any wide scale is unlikely either to be systematically pursued or successfully executed."

While it may be true that the tax can be easily evaded, nevertheless the Court, speaking through Justice Frankfurter, said: "The property is enjoyed by an Iowa resident partly because the opportunity is given by Iowa to enjoy property no matter whence acquired. The

exaction is made against the ultimate consumer—the Iowa resident who is paying taxes to sustain his own state government. To make the distributor the tax collector for the State is a familiar and sanctioned device."

As we find no valid objection to the assessment, we affirm the judgment entered in the short note case in favor of the State and also the order in the attachment case denying appellant's petition to quash the attachment.

*Judgment affirmed, with costs.*
*Order affirmed, with costs.*